IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PORCHA HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 24 C 341 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| TARGET CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Porcha Hill brings this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000 *et seq*., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, the

Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 *et seq.*, the Illinois Gender Violence Act,

740 Ill. Comp. Stat. 82 *et seq.*, and the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174 *et

seq.*, as well as state common law theories.[1] Hill alleges that her employer, Target Corporation

("Target"), subjected her to racial discrimination and harassment (Counts I and III), gender

discrimination and violence (Count IV and VI), and sexual discrimination, harassment, assault,

and battery (Counts II and V). She also claims that Target retaliated against her for complaining

about the discrimination and harassment she experienced (Counts VII and VIII). Target moves to

dismiss the entirety of Hill's complaint. (Dkt. 25.) For the reasons stated below, the court grants

the motion in part and denies it in part.

---

[1] The court has jurisdiction under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5(f)(3) (Title VII), 42 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is proper under 28 U.S.C. § 1391(b).

## BACKGROUND[2]

Porcha Hill is an African-American woman. On October 14, 2021, Defendant Target Corporation ("Target") hired Hill to work as a Warehouse Associate in Target's warehouse facility in Chicago, Illinois. Hill's responsibilities included working on the packing station to prepare orders. Target employed Hill until September 12, 2022.

While working at Target, several of Hill's male coworkers sexually harassed her on a "near daily-basis." (Dkt. 22 ¶¶ 288–90.) Her coworkers commented on her figure, stared at her inappropriately, and followed her around the warehouse. Al Green, one of Hill's coworkers, "intentionally brush[ed] against [Hill's] body when walking past her." (*Id.* ¶ 268.) Derrell (last name unknown) grabbed Hill's rear and suggested that she perform oral sex on him in an unoccupied part of the workplace. Hill implies that Derrell loosened and removed lug nuts on her car after she rebuffed his advances. Charles (last name unknown), who is a registered sex offender, regularly made inappropriate comments about Hill's body and stared at her genital area.

Hill made multiple reports to Human Resources ("HR") regarding her coworkers' behavior. Target took no corrective action. To the contrary, HR informed Hill that nothing could be done unless Charles and Green physically touched her, and Green's behavior was "only harassment if you take it that way." (*Id.* ¶¶ 270, 273, 285.)

Hill's supervisors also racially harassed her. They made stereotypical comments towards Hill and other Black employees, publicly degraded her based on her race, and spoke to her slowly and with simple words "as if [she] could not understand regular speech." (*Id.* ¶¶ 195–

---

[2] Except as otherwise noted, the Background section is drawn from Hill's complaint. (Dkt. 22.) The court only includes allegations that are relevant to Target's motion to dismiss. (Dkt. 25.) Hill's well-pleaded allegations are accepted as true. *Chaidez* v. *Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).

234.) Supervisor/Operational Manager Hanz Leone repeatedly made racially motivated comments to Hill, including that her "weave [would get] stuck in machinery," and referred to Black people as "y'all." (*Id.* ¶¶ 207–08.) Leone once stated, referring to Black employees, "Y'all not to be trusted." (*Id.* ¶¶ 130–31.) After Hill reported Leone's statements to HR, Leone told Hill, "'I know you reported me,' and smiled at her in an intimidating manner." (*Id.* ¶ 211.) Hill's other supervisor, Joe (last name unknown), frequently stared at Hill, followed her to the bathroom and breakroom, and told Hill to "stop talking" when she reported mistreatment. (*Id.* ¶¶ 219, 221.) Target did not address Hill's complaints of racial harassment and ignored her requests for relocation to a different department.

In approximately November 2021, Hill filed an anonymous Occupational Safety and Health Administration ("OSHA") complaint detailing unsafe working conditions, including Target's failure to implement proper COVID-19 protocols and freezing working conditions. After informing HR Business Partner Mike Przysucha of the OSHA complaint, Hill's supervisor, Lead Warehouse Associate Diana, began to harass her. Diana isolated Hill from her coworkers, stared at her while whispering to others in the lunchroom, and required her to pick through the trash with her bare hands. Following the OSHA complaint, Przysucha began to ignore her complaints of harassment.

Hill alleges that she experienced other forms of discrimination. From April 2022 to July 2022, Hill applied for nine separate roles within Target and was summarily rejected for every role. Other "less qualified, less experienced" non-Black and male employees "were offered roles for which [she] was denied." (*Id.* ¶¶ 329, 350.) Hill also requested, and was denied, a transfer at least 20 times. On August 25, 2022, Hill filed a complaint with the U.S. Equal Employment

3

Opportunity Commission ("EEOC"). Days later, Hill filed an "amended charge" stating that her supervisor, Diana, followed her into the bathroom. (*Id.* ¶ 83.)

Target provided Hill with a termination notice on September 12, 2022. The notice stated that her Family and Medical Leave paperwork contained "an issue" and that Hill took time off without approval. (*Id.* ¶¶ 88–89.) Target formally terminated Hill due to "work performance" and "tardies." (*Id.* ¶ 91.) Hill contends that she was only tardy on two occasions, both due to weather, and did not apply for leave.

On or about April 23, 2023, Hill filed with the EEOC both a Pre-Charge Inquiry, EEOC Form 290A, and Charge of Discrimination, EEOC Form 5A ("Charge").[3] Hill's Pre-Charge Inquiry includes allegations of racial and sexual harassment. The Charge alleges discrimination based on (1) race; (2) disability; (3) genetic information; (4) retaliation; and (5) other. As part of the Charge, Hill authored a narrative describing the discriminatory conduct. On April 25, 2023, the EEOC received the Charge, which was assigned Charge Number 440-2022-08421. Hill alleges that the filing "was perfected" the next day. (*Id.* ¶ 109.)

On October 2, 2023, Hill filed an Amended Charge of Discrimination, EEOC Form 5, with the EEOC stating that she "was subjected to racial harassment, sexual harassment, and denied reasonable accommodation.… because of [her] sex, female, and [her] race, Black, and retaliation for engaging in protected activity." (Dkt. 22-1 at 6.) The EEOC granted Hill's request for a Notice of a Right to Sue on November 27, 2023.

---

[3] Target argues that Hill's "inquiry" document "is not included in any of the pleadings or filings in this court and thus should not be considered by this Court." (Dkt. 26 at 8.) Hill attached the Pre-Charge Inquiry to her complaint. (Dkt. 22-1 at 2–4.) It is therefore properly considered here. *Williamson* v. *Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[A] court may consider … documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

Hill filed the instant action on January 12, 2024. Target moved to dismiss Hill's initial complaint for failure to state a claim. Instead of responding to Target's motion, Hill filed an amended complaint ("First Amended Complaint").[4] On May 14, 2024, Target moved to dismiss the entirety of Hill's First Amended Complaint.[5]

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

The court accepts as true a complaint's well-pleaded allegations and draws all reasonable inferences in the plaintiff's favor. *Chaidez* v. *Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). To survive a Rule 12(b)(6) motion, the complaint must establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[4] The parties dispute the number of times Hill has amended her complaint. Early in this litigation, Hill improperly filed various documents with the court, including two versions of her complaint without the appropriate filing fee or in forma pauperis application, as required under Local Rule 3.3. Hill subsequently submitted her application for leave to proceed in forma pauperis, which the court granted. Accordingly, the first complaint properly before the court was filed on January 22, 2024. The court granted leave to amend Hill's complaint once thereafter. The court therefore concludes that Hill's existing complaint constitutes her First Amended Complaint.

[5] The court denied Hill's motion for leave to file a sur-reply *instanter*, which sought to add an inadvertently omitted exhibit and to supplement her briefing with initially overlooked substantive arguments. The court rules on Target's motion to dismiss as presented.

*Taha* v. *Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). When evaluating a Rule 12(b)(6) motion, the court "may examine exhibits … attached to the complaint, or referenced in the pleading if they are central to the claim." *Esco* v. *City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

## ANALYSIS

### I.     Procedural Arguments

#### A.  "Shotgun Pleading"

Target initially argues that Hill's complaint must be dismissed because it is an "improper shotgun pleading." (Dkt. 26 at 3.) "Shotgun" pleading is "a pleading style in which each count of the complaint incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading." *Damian* v. *Courtright*, No. 21 C 1694, 2021 WL 3144447, at *4 (N.D. Ill. July 26, 2021) (quotation omitted).

For each count, Hill "incorporates all preceding and subsequent paragraphs." (Dkt. 22 ¶¶ 188, 243, 317, 341, 359, 398, 441, 486.). Nevertheless, "a complaint's incorporation by reference of each of the preceding factual allegations does not amount to impermissible 'shotgun' pleading, so long as the complaint gives the defendant sufficient notice." *Damian*, 2021 WL 3144447, at *4.

Hill's 513-paragraph First Amended Complaint is not always clear but generally is "not too confusing." *See Douglas* v. *Alfasigma USA, Inc.*, No. 19-CV-2272, 2021 WL 2473790, at *9 (N.D. Ill. June 17, 2021) (declining to dismiss complaint on "shotgun pleading" grounds). Moreover, Target devotes most of its briefing to substantive arguments and seems to have

6

grasped the allegations relevant to each claim.[6] *See id.* ("Firing off a lot of allegations all at once is not enough to sink a complaint when the defendant can follow along without much trouble.") Accordingly, the court will not dismiss the First Amended Complaint in its entirety on this basis.

That said, Hill's incorporation of all allegations into each count unnecessarily complicates the claims and, in one instance, defeats a claim, as explained below.

### B. Rule 11 Sanctions

The court next addresses Hill's assertion that counsel for Target failed to fulfill their Rule 11 obligation to ensure that their arguments are nonfrivolous. Hill repeatedly complains that Target's arguments "cite no legal authority" and thus should be "completely disregard[ed]." (Dkt. 28 at 4, 6, 8, 9, 10, 13.) Target denies this, contends that Hill seeks sanctions by invoking Rule 11, and asks the court to deny Hill's request.

Hill appears to have overlooked Target's memorandum of law in support of its motion to dismiss, which contains arguments that are substantially supported by references to legal authority. In any event, the court does not read Hill's vague references to Rule 11 as a formal motion for sanctions and so declines to consider it as such. *See Leventhal* v. *Schenberg*, No. 11 C 4614, 2013 WL 1809889, at *4 (N.D. Ill. Apr. 29, 2013) (concluding that request for Rule 11 show cause order embedded in another motion did not constitute a motion for sanctions because defendants did not seek "any specific sanctions" against plaintiff).

### II.     Section 1981 (Counts I, III, VII)

Target argues that Hill's Section 1981 claims "must be dismissed because her Complaint alleges multiple different causes for the alleged discrimination, and Section 1981 requires that

---

[6] Target notes that it has "drafted [its] Motion based on its interpretation of the claims and reserves the right to raise additional arguments in support of dismissal." (Dkt. 26 at 4.)

race is the 'but for' cause of the alleged employment action." (Dkt. 26 at 5.) Section 1981 plaintiffs "must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp.* v. *Nat'l Ass'n of African Am. Owned Media*, 589 U.S. 327, 341 (2020). The Supreme Court has rejected the "motivating factor test," used in Title VII practice, as applied to Section 1981 pleading. *Id.*[7]

Following *Comcast*, to plead a Section 1981 claim, "Racial discrimination must be the determining factor." *Piccioli* v. *Plumbers Welfare Fund Local 130, U.A.*, No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020). Courts have therefore dismissed Section 1981 claims under a "but-for causation" theory where plaintiffs "articulated a theory of discrimination based, at least in part, on a characteristic § 1981 does *not* protect." *Peaster* v. *McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) (collecting cases). Target argues that Hill "pleads many different bases" for the alleged treatment beyond race, including sex discrimination and retaliation under the IWA based on a complaint about workplace conditions. (Dkt. 26 at 5.) As a result, Target contends, Hill "cannot plausibly plead that race was the but for cause of the actions." (*Id.*) Hill does not respond or challenge this view with competing authority but rather reiterates the *Comcast* standard and her complaint allegations.

### A. Harassment/Hostile Work Environment (Count I)

Hill primarily alleges that three Target employees racially harassed her: Supervisor/Operational Manager Hanz Leone, Supervising Manager Joe (last name unknown), and Lead Warehouse Associate Diana (last name unknown). (Dkt. 22 ¶ 114.) With respect to

---

[7] The but-for causation test is a "higher burden than Title VII's motivating factor test." *Nelson* v. *Idleburg*, No. 18 CV 2839, 2020 WL 2061555, at *5 (N.D. Ill. Apr. 29, 2020) (citing *Boyd* v. *Ill. State Police*, 384 F.3d 888, 895 (7th Cir. 2004)) (explaining that in the context of Title VII race discrimination, "there is a difference between a motivating factor[ ] and a single factor that is the precipitating force" of an employment action).

Leone and Joe, Hill identifies numerous instances of harassment where race is the singular alleged cause.

For instance, Hill alleges that Leone made racially derogatory comments to Hill, many of which included racial stereotypes, such as jokes related to Hill's "weave getting stuck in machinery." (*E.g.*, *id.* ¶¶ 207–17.) Hill also alleges that Leone stated, apparently referring to Black employees, "Y'all not to be trusted." (*Id.* at ¶¶ 130–31.) Hill does not allege that Leone's harassing comments were based upon her sex or other unprotected activity.

The same is true for Supervising Manager Joe. Hill alleges that he "would regularly speak aggressively and yell at [Hill] in front of coworkers, walk away from [Hill] as she was speaking, and instruct [Hill] to consult other supervisors when she would approach." (*Id.* ¶ 218.) Additionally, Joe stared Hill down as she cried while reporting mistreatment, told her to "stop talking," and followed her around the worksite. (*Id.* ¶¶ 219, 221.) Hill alleges that these actions, among others, "amount to hostile work environment harassment against [her] on the basis of her race." (*Id.* ¶ 238.) Hill does not allege that Joe harassed her based upon unprotected activity.

With respect to Lead Warehouse Associate Diana, however, Hill's theory changes. She alleges that Diana required her to pick through garbage (*id.* ¶ 205); stared at her while whispering to Joe (*id.* ¶ 223); and isolated her from coworkers. (*Id.* ¶ 229.) While these instances were allegedly based on Hill's race, (*id.* ¶ 238), Hill also alleges that the harassment stemmed from her OSHA complaint regarding unsafe working conditions: "following [Hill's] notice of filing a complaint, Diana began to harass [Hill]." (*Id.* ¶¶ 501, 506.)

Section 1981 does not protect such activity. *See Nicholson* v. *Waste Mgmt., LLC*, No. CV423-295, 2024 WL 4171375, at *4 (S.D. Ga. July 31, 2024) *report and recommendation adopted*, No. 4:23-CV-295, 2024 WL 3952166 (S.D. Ga. Aug. 27, 2024) (dismissing Section

1981 claim based on theory of retaliation for OSHA complaint regarding workplace safety). Accordingly, to the extent Hill's Section 1981 harassment claim relies on allegations about Diana, it must be dismissed for failure to allege but-for causation. *See Arora* v. *Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022) ("Because [plaintiff] pleads not only race but also his ethnicity and national origin as the cause of Defendants' discrimination, his Section 1981 claim fails as a matter of law."). Hill's citation to *Freeman* v. *Metro. Water Reclamation Dist.*, 927 F.3d 961, 965 (7th Cir. 2019) is unavailing, as *Freeman* predates *Comcast* and addressed a plaintiff's "failure to plead [an] evidentiary element," not causation.

The court therefore denies Target's motion to dismiss Count I under Section 1981 to the extent Hill alleges racial harassment related to Leone and Joe. The court dismisses the remainder of Count I under Section 1981 without prejudice to replead.

## B. Discrimination (Count III)

Hill next alleges racial discrimination: despite applying for several different positions within the company, Hill was rejected from every role while less qualified and less experienced non-Black employees received offers.[8] (Dkt. 22 ¶¶ 324–30.) Nevertheless, Hill brings precisely the same allegations in support of her gender discrimination claim. (*Id.* ¶¶ 345–51.) Section 1981 does not protect sex-based claims. *Phillips* v. *Baxter*, No. 16 C 8233, 2020 WL 2197842, at *5 (N.D. Ill. May 6, 2020) ("[Section 1981] does not apply to intentional sex discrimination."). As

---

[8] Hill also reincorporates her allegations of harassment in support of her discrimination claim. (Dkt. 22 ¶¶ 321–23.) "A hostile work environment harassment claim is a type of discrimination claim, but it is distinct from a discrimination claim based on discrete acts, such as refusal to promote." *Seung-Whan Choi* v. *Bd. of Trustees of Univ. of Illinois*, No. 16 C 11627, 2017 WL 3278823, at *8 (N.D. Ill. Aug. 2, 2017). The court therefore considers the "additional facts alleged to support [Hill's] discrimination … claim[]," rather than the overlapping allegations. *Id.*; *see also Brownlee* v. *Cath. Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *4 (N.D. Ill. Feb. 28, 2017) (striking counts that "wholly duplicate facts and legal theories").

Hill fails to allege that race was the but-for cause of the discrimination, her claim under this theory must be dismissed. *See Arora*, 2022 WL 7426211, at *2.[9]

The remainder of Count III consists only of conclusional allegations such as: "[Hill] was treated worse and differently from her other, non-black coworkers." (Dkt. 22 ¶ 332.) Standing alone, these allegations are insufficient to state a claim. The court therefore grants Target's motion to dismiss Count III under Section 1981 without prejudice to repleading.

### C. Retaliation (Count VII)

The court next addresses whether Hill pleads a Section 1981 claim for retaliation. The opening pages of Hill's First Amended Complaint suggest that she does not. In Hill's "Nature of the Case," which sets out each claim in a separate count, Count VII is not listed among those "brought pursuant to Section 1981." (Dkt. 22 ¶ 2.) Nevertheless, Hill seems to imply in paragraph 442 that Count VII is brought in part under Section 1981. (*Id.* ¶ 442) ("Defendant retaliated against Plaintiff for her opposition to unlawful racial discrimination and harassment in violation of Title VII, the IHRA, and 42 U.S.C. § 1981.").

Hill must provide Target with "fair notice of what the … claim is and the grounds upon which it rests." *Alexander* v. *Ne. Illinois Univ.*, 586 F. Supp. 2d 905, 910 (N.D. Ill. 2008) (quoting *Twombly*, 550 U.S. at 544). These conflicting references do not provide Target with fair notice that Hill brings a Section 1981 retaliation claim. *See Penland* v. *Chicago Park Dist.*, No. 1:21-CV-05581, 2023 WL 2078459, at *6 (N.D. Ill. Feb. 17, 2023) (concluding that complaint

---

[9] In *Peaster* v. *McDonald's Corp.*, the court held that, where the plaintiff pleaded that race and retaliation for protected activity were independently but-for causes, his allegations satisfied the *Comcast* standard since both were protected under § 1981. 2023 WL 5387573, at *4–5. Here, by contrast, sex discrimination is not protected by §1981. The but-for causation standard, however, is "not necessarily inconsistent with pleading that an adverse employment action had two but-for causes, or that either of two factors was the only but-for cause, provided that the complaint properly pleads in the alternative." *Id.* at *4 (citation omitted). *But see Arora*, 2022 WL 7426211, at *3 (granting judgment on the pleadings where the plaintiff did not "really plead *in the alternative*; rather, he asserts that race, ethnicity, national origin, and citizenship-status all motivated Defendants' actions") (emphasis in original).

did not satisfy notice pleading requirement where it "leaves Defendants (and the Court) to guess at their claims and legal theories"). Indeed, Target did not ascertain such a claim in its briefing. The court therefore dismisses Hill's Section 1981 retaliation claim without prejudice to repleading.

### III.    Title VII Claims (Counts I, II, III, IV, VII)

Target contends that Hill's Title VII claims are barred for failure to exhaust her administrative remedies. Before bringing Title VII claims in federal court, plaintiffs must exhaust their administrative remedies by "filing charges with the EEOC and receiving a right to sue letter." *Chaidez*, 937 F.3d at 1004. Plaintiffs "may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (citation omitted).

Whether complained-of conduct falls within the scope of a plaintiff's EEOC charge is a question of law. *Conner* v. *Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). "[A]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Swearnigen-El* v. *Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (citation omitted). To clarify the scope of Hill's charge, the court first considers each of her alleged EEOC filings.

### A.  EEOC Filings

#### i.    August/September 2022 Filings

Hill alleges that she "filed her first complaint with the EEOC on August 25, 2022." (Dkt. 22 ¶ 81.) Hill does not quote from this document in her First Amended Complaint or briefing, nor does she allege its content. It is therefore properly excluded here. *See Owens* v. *Cent. Tr. Bank*, No. 6:13-CV-03433-MDH, 2014 WL 12993949, at *5 n.9 (W.D. Mo. Aug. 19, 2014)

(declining to consider exhibit referenced in complaint where it was not "attached to the pleading, the contents [were] not explained therein … [and] the exhibits were not provided to this Court to consider as a part of this motion to dismiss.").

Hill also alleges that on September 8, 2022, she "filed an amended charge with the EEOC detailing an incident where Lead Warehouse Associate, Diana, would follow her into the bathroom." (Dkt. 22 ¶ 83.) Hill does not attach the document to her First Amended Complaint, nor does she allege that she received a right-to-sue letter. The court therefore will not consider the September 2022 filing for exhaustion purposes. *Jones* v. *Bremen High Sch. Dist. 228*, No. 08 CV 3548, 2009 WL 537073, at *2 (N.D. Ill. Mar. 4, 2009) (declining to consider EEOC charge where plaintiff failed to attach a right-to-sue letter "or even allege[] that she received one").

### ii.    April 2023 Filings

Hill next alleges that she filed her "original inquiry on April 23rd, 2023."[10] (Dkt. 22 ¶ 254.) Hill appeared to complete two documents on or about April 23rd. The first is a Pre-Charge Inquiry, EEOC Form 290A, which complains of "sexual comments" and race discrimination. (Dkt. 22-1 at 2–4.)[11] Target argues that this document should not be considered because "an Inquiry is not a Charge" for purposes of administrative exhaustion. (Dkt. 26 at 8.)

Pre-charge inquiries are not inherently considered part of an EEOC charge for exhaustion purposes. *See, e.g.*, *Herrera* v. *Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 828 (N.D. Ill. 2021) (declining to consider pre-charge inquiry form as part of charge for exhaustion purposes); *Surgit* v. *City of Chicago*, No. 1:19-CV-07630, 2023 WL 2746000, at *6 (N.D. Ill. Mar. 31, 2023)

---

[10] In her response brief, Hill appears to refer to the document as an "unperfected charge." (Dkt. 28 at 7) (citing dkt. 22-1 and describing contents of the attached Pre-Charge Inquiry).

[11] Target argues that Hill's purported "inquiry" document is not included in any of the pleadings or filings before the court and thus should not be considered. (Dkt. 26 at 8.) Hill attached her Pre-Charge Inquiry as an exhibit to her First Amended Complaint (dkt. 22-1 at 2–4), so the court will consider it here. *Curran*, 714 F.3d at 436.

("[An] EEOC Charge is distinct from this pre-charge inquiry form for administrative exhaustion purposes"). Indeed, on every page, the form provides in bold, capital letters: "**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**." (Dkt. 22-1 at 2–4.) Hill does not respond to Target's argument. The court therefore will not consider Hill's Pre-Charge Inquiry as part of her charge in evaluating administrative exhaustion.

The next document completed on April 23, 2023, is a Charge of Discrimination ("Charge"), EEOC Form 5A. (*Id.* at 4.) In response to the question, "Why you think you were discriminated against?" Hill checked the following boxes: "Race"; "Disability"; "Genetic Information"; "Retaliation"; "Other (*specify*)." (*Id.* at 5.) Hill's description of discriminatory action provides, in full:

> It started with me being told to pick the garbage and get paper out she degraden [*sic*] me I was being followed to the bathroom managers telling me I'm aware of you reporting me I was being made to work places that affected my astma [*sic*] I reported a manager staring me down evenaday [*sic*] I went to hr multiple times complain about the treatment I was receiving and nothing was done about it I broke down 2tmes [*sic*]."

(*Id.*; dkt. 26 at 6.)

EEOC received Hill's Charge on or about April 25, 2023. (Dkt. 22-1 at 5.) Hill's Charge was "perfected" on April 26. (Dkt. 22 ¶ 109.) Hill received notice of her right to sue based on this Charge on November 27, 2023. (Dkt. 22-1 at 8.) For exhaustion purposes, then, the court will consider whether the allegations in Hill's First Amended Complaint are like or reasonably related to Hill's April 23, 2023 Charge.

### iii.    October 2023 Filing

Finally, Hill references an Amended Charge of Discrimination, EEOC Form 5, signed on October 2, 2023 ("Amended Charge"). (Dkt. 22-1 at 6.) The Amended Charge contains additional allegations related to Hill's treatment at Target, including that she was "subjected to

discrimination because of [her] sex, female, and [her] race, Black, and retaliation for engaging in protected activity." (*Id.*) Target contends that the Amended Charge "impermissibly attempts to expand the scope" of Hill's initial charge with "new, conclusory, and time-barred allegations" and should be considered a separately filed charge. (Dkt. 26 at 10.)

Prior to filing a lawsuit, "a plaintiff must timely file a Charge with the … EEOC within 300 days after the last alleged violation." *Solinski* v. *Higher Learning Comm'n*, No. 1:20-CV-05236, 2021 WL 1293841, at *2 (N.D. Ill. Apr. 7, 2021). If a plaintiff does not do so "within the 300-day window, her claim is time-barred and she may not recover." *Bass* v. *Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Nevertheless, a plaintiff may amend a charge to "cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *Solinski*, 2021 WL 1293841, at *2 (quoting 29 C.F.R. § 1601.12(b)). In such cases, the amended charge "will relate back to the date of the original filing." *Id.*

Here, the latest possible violation is September 12, 2022—the day Hill alleges she was terminated. (Dkt. 22 ¶ 91.) Hill filed the Amended Charge on October 2, 2023, which exceeds the 300-day window. (*Id.* ¶ 110.) Accordingly, to the extent the allegations in Hill's Amended Charge do not relate back, they are untimely. The court will therefore only consider those allegations in the Amended Charge that clarify or amplify Hill's initial Charge.

### B. Administrative Exhaustion

Hill brings Title VII claims of racial harassment, discrimination, and retaliation, as well as sexual harassment and gender discrimination. Target contends that Hill's Charge "does not support any of the Title VII … claims in her lawsuit." (Dkt. 26 at 10.)

15

### i. Racial Harassment (Count I)

The court first addresses Hill's claim of racial harassment under Title VII. As an initial matter, the EEOC Charge procedure is typically initiated by laypeople and "unassisted by trained lawyers." *Alibuxsh* v. *Extractor Corp.*, No. 19 C 03032, 2020 WL 10937721, at *2 (N.D. Ill. Dec. 18, 2020) (quoting *Jenkins* v. *Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976)). As such, the EEOC charge should be "liberally construed." *Id.* Here, Hill describes racial harassment by multiple "managers" that can be traced directly to the allegations against the supervisors in her First Amended Complaint.

For example, Hill's Charge allegation that she was directed to "pick the garbage" can be traced only to Lead Warehouse Associate Diana. (Dkt. 22 ¶ 205.). So too with Hill's Charge allegation of a manager telling her, "I'm aware of you reporting me," which implicates Hill's Supervisor and Operational Manager Hanz Leone. (*Id.* ¶¶ 124, 211.) Finally, alleging that a manager followed her into the bathroom and stared her down relates to the allegations involving Supervising Manager Joe. (*Id.* ¶¶ 219, 221.) Hill frames these allegations as "hostile work environment harassment against Plaintiff on the basis of her race" (*id.* ¶ 238), which aligns with her decision to check the "Race" box in her Charge. *See, e.g.*, *Broxton* v. *City of Chicago*, No. 96 C 2488, 1996 WL 411422, at *1 (N.D. Ill. July 18, 1996) ("Checking the box stating she was discriminated against because of her race is a sufficient allegation of racial discrimination."); *Jako* v. *Aegis Servs., Ltd.*, No. 91 C 4122, 1992 WL 132541, at *1 (N.D. Ill. June 5, 1992) ("By checking the box marked "RACE" on the charging form, [plaintiff] expressed his belief that he had been discriminat[ed] against on the basis of race."). Hill also clarifies in her Amended Charge that she "was subjected to racial harassment." (Dkt. 22-1 at 6.)

Hill's failure to identify the names of the supervisors who allegedly harassed her does not defeat her claim. *See, e.g.*, *Griffin* v. *Sutton Ford, Inc.*, 452 F. Supp. 2d 842, 846–47 (N.D. Ill. 2006) (denying defendant's motion to dismiss for failure to exhaust where plaintiff identified "co-workers," "management," and her employer). The cases on which Target relies are therefore inapposite. *Carr* v. *City of Chicago*, *Chic. Bd. of Educ.*, No. 19-CV-7275, 2023 WL 6520348, at *4 (N.D. Ill. Oct. 4, 2023) (dismissing Title VII claim because the plaintiff "presented no opportunity to [defendants] to become aware of the nature of her claims and settle them"); *Earl* v. *Jewel Food Stores, Inc.*, 18 C 8279, 2020 WL 4607243, at *3–4 (N.D. Ill. Aug. 11, 2020) (dismissing Title VII claim because allegations did "not appear to implicate the same individuals" as the discrimination claims in plaintiff's charge).

Accordingly, Hill's Charge is reasonably related to her race-based Title VII harassment claims involving Leone, Joe, and Diana. *See Steele* v. *APL Logistics*, No. CIV.A. 07 C 6440, 2008 WL 268705, at *3–4 (N.D. Ill. Jan. 28, 2008) (denying motion to dismiss Title VII claim for failure to exhaust, as the plaintiff was only required to state, in layman's terms, the "unfair thing that happened" and concluding that allegations were reasonably related to the charge because they described the "same time frame, similar conduct, and the same individual") (quoting *Jenkins*, 538 F.2d at 167). As such, to the extent Hill alleges racial harassment as to those individuals, she has exhausted her administrative remedies. The court denies Target's motion to dismiss Count I under Title VII.

### ii. Racial Discrimination (Count III)

Hill next brings a claim of racial discrimination under Title VII, again alleging failure to hire her for several internal positions. (Dkt. 22 ¶¶ 324–30.) "Ordinarily, charges of discrimination and harassment are not sufficiently like or reasonably related to permit an EEOC

charge of one type of wrong to support a subsequent civil suit for another." *McElroy* v. *Advoc. Healthcare Sys. Cordell*, No. 17 C 50270, 2018 WL 5016825, at *4 (N.D. Ill. Oct. 16, 2018) (citation omitted). To survive exhaustion, Hill's First Amended Complaint must, at minimum, "describe the same circumstances and participants." *Cervantes* v. *Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019) (citation omitted).

Hill alleges no such facts. Her failure-to-hire allegations do not implicate Leone, Joe, or Diana, nor do they describe the same circumstances surrounding the harassing conduct outlined in Hill's Charge. (Dkt. 22 ¶¶ 324–30.) Hill's discrimination claim therefore is not reasonably related to the allegations in her Charge.[12] The court grants Target's motion to dismiss Count III under Title VII without prejudice. *Chaidez*, 937 F.3d at 1008 (concluding that claim dismissed for failure to exhaust should be dismissed without prejudice, permitting plaintiff to refile after exhaustion or unexhausted claims dropped).[13]

### iii.    Retaliation (Count VII)

Finally, Hill brings a claim of retaliation under Title VII. Hill identifies two actions that "raise[] a retaliatory inference." (Dkt. 22 ¶¶ 464, 472.) First is a "write-up" in August 2022. (Dkt. 22 ¶ 464.) In July, Hill complained to HR regarding "'targeted behavior' on a daily basis from coworkers and management." (*Id.* ¶ 458.) On August 16, Supervising Manager Joe approached Hill as she chewed food while exiting the breakroom and said that he would write

---

[12] The authority on which Hill relies does not compel a different conclusion. In *Eggleston* v. *Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 906 (7th Cir. 1981), the court explained that *pro se* complainants are "not expected to file EEOC charges … in precise terms." The court still asked, however, "whether [plaintiff's] initial charge adequately served to notify the [employer] of the alleged violation." *Id.* Hill has failed to do so here. For the same reason, *Chaidez* does not support her claim. 937 F.3d at 1006 ("Count II asserted a claim that *was* included in the EEOC charges: namely, the disparate impact of the basic skills test.").

[13] Dismissal without prejudice remains appropriate even if "there may be no practical distinction here between a dismissal with prejudice and a dismissal without prejudice … because [Hill] now may be unable to exhaust [her] administrative remedies with respect to [her] claims." *Smuk* v. *Specialty Foods Grp., Inc.*, No. 13 C 08282, 2015 WL 135098, at *2 n.1 (N.D. Ill. Jan. 9, 2015) (quotation omitted).

her up for "eating chips on the floor." (*Id.* ¶ 460.) Hill responded that she was "chewing her last bite," to which Joe responded that he would write her up for a second offense: "being combative." (*Id.* ¶ 461.) Hill allegedly filed a complaint with the EEOC on August 25, 2022, and shortly thereafter, was written up due to "unacceptable conduct" related to eating on the warehouse floor. (*Id.* ¶¶ 463–64.) Hill contends that Target's actions "amount to unlawful retaliation." (*Id.* ¶ 481.) Second, Hill alleges that she was terminated in retaliation for her complaints of racial harassment and discrimination.

Hill mentions neither action in her Charge. She does not explain that she was written up for eating on the warehouse floor, nor does she reference her termination. The harassing activity by Hill's supervisors described in the Charge is also insufficient, as retaliation is different in nature from harassment. *Shamim* v. *Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 504 (N.D. Ill. 2012) ("[R]etaliation … and harassment claims are normally not like or reasonably related to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another.") (quoting *Sitar* v. *Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (quotation omitted)).

Hill argues that she was forced to pick through waste "after she informed HR she had complained to OSHA" (dkt. 28 at 7), but the Charge does not reference an OSHA complaint. Although Hill checked the "Retaliation" box, this alone is insufficient to survive exhaustion. *Mathews* v. *Columbia Coll. Chi.*, 435 F.Supp.2d 805, 812 (N.D. Ill. 2006) ("Merely checking the box 'retaliation' on the charge is not enough to include any retaliation claim; the type of retaliation described in the EEOC charge must be the same as that described in the complaint.").

The court therefore grants Target's motion to dismiss Count VII under Title VII without prejudice.[14]

### iv. Sex-Based Claims (Counts II, IV)

Hill next alleges claims of "hostile work environment sexual harassment" and gender discrimination under Title VII. (Dkt. 22 at 24, 36.) Hill did not check the "Sex" box in her Charge. This does not necessarily defeat her claim, however: "a plaintiff who fails to mark the box for sex-based discrimination in an EEOC charge can still raise sex-based discrimination through statements made within the charge." *Hickman* v. *McMillon*, No. 21-CV-02407, 2022 WL 2316230, at *3 (N.D. Ill. June 28, 2022). Even so, the allegations in Hill's Charge "offer[] no such hook." *Id.* Hill fails to describe either sexual harassment or gender discrimination in her Charge. Based on the allegations, "the EEOC could not have discerned a sex-based claim from [Hill's] charge." *Id.*

The court also may not consider sex-based allegations raised for the first time in Hill's Amended Charge. The sex-based harassment and discrimination described in the Amended Charge does not "clarify or amplify" the allegations of racial harassment in Hill's Charge. *Jones*, 2009 WL 537073, at *3 ("[D]iscrimination based on gender is entirely distinct from discrimination based on race."). Therefore, the allegations do not relate back to Hill's initial Charge and are time-barred. *Bass*, 746 F.3d at 839. The court dismisses Hill's sex-based claims under Title VII (Counts II, IV) without prejudice.

---

[14] The court granted Hill's Amended Motion for Leave to Cite Additional Authority which adds reference to *Thomas* v. *JBS Green Bay, Inc.*, 120 F.4th 1335 (7th Cir. 2024). *Thomas* is inapposite, however. The panel determined that the district court misapprehended the sufficiency of the pleadings. *Id.* at 1336 ("The judge saw two problems that ran through both complaints: first, the events of which Thomas complains are not sufficiently serious to be cognizable under Title VII; second, the complaints did not lay out every element or ingredient that Thomas eventually would need to prove. … Both aspects of the judge's decisions are mistaken."). It did not consider exhaustion of the plaintiff's administrative remedies.

#### IV.     Illinois Human Rights Act (Counts I, II, III, IV, VII)

Hill next brings several claims under the Illinois Human Rights Act ("IHRA"), the state-law analogue to Title VII. *Zaderaka* v. *Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) (applying Title VII analytical framework to IHRA). Target contends that Hill has "failed to allege any basis to support exhaustion of the IHRA claims in this lawsuit." (Dkt. 26 at 3 n.1.)

The IHRA "requires a complainant to exhaust administrative remedies prior to filing a civil lawsuit." *Gray* v. *Vill. of Hazel Crest*, No. 21-CV-6372, 2022 WL 2181428, at *2 (N.D. Ill. June 16, 2022). Under Illinois law, "the comprehensive scheme of remedies and administrative procedures of the IHRA is the exclusive source of redress for alleged violations of the act." *Jimenez* v. *Thompson Steel Co.*, 264 F. Supp. 2d 693, 695 (N.D. Ill. 2003) (citing *Mein* v. *Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985)). To fulfill the exhaustion requirement, Hill must have "filed the necessary complaint with the Illinois Department of Human Rights ["IDHR"] and received a final order from the Illinois Human Rights Commission." *Trnava* v. *Chicago Cut Steakhouse*, LLC, No. 20-CV-0928, 2021 WL 148870, at *2 (N.D. Ill. Jan. 16, 2021).

Hill contends that she "amended her complaint with IDHR and cross-filed with EEOC on October 2, 2023." (Dkt. 28 at 6.) Hill does not allege, however, that she received a right to sue letter from the Illinois Human Rights Commission. Additionally, "a right to sue letter from the EEOC does not serve as a substitute for a final order from the IDHR" for purposes of exhaustion. *Anderson* v. *Centers for New Horizons, Inc.*, 891 F. Supp. 2d 956, 960 (N.D. Ill. 2012) (quotation omitted). The court therefore grants Target's motion to dismiss Hill's IHRA claims without prejudice. *See Zemater* v. *Pub. Action to Deliver Shelter Inc.*, No. 22 CV 6712, 2024 WL 3694524, at *2 (N.D. Ill. Aug. 7, 2024) (dismissing IHRA claim "because there is no

allegation that [plaintiff] exhausted his claim by presenting it to the Human Rights Commission") (citation omitted).

## V.      Assault and Battery Claims (Count V)

Hill next brings common law assault and battery theories, asserting that Target is liable under *respondeat superior*. Al Green, one of Hill's co-workers, allegedly followed Hill to the break room, invaded her personal space and repeatedly brushed "his crotch and penis against her." (*Id.* ¶¶ 362, 364.) Derrell (last name unknown), another one of Hill's co-workers, allegedly grabbed Hill inappropriately and sexually propositioned her. Hill also suggests that Derrell vandalized her car after rebuffing his advances.

An employer "may be held liable for the torts of its employee if the tort is committed within the scope of employment." *Krause* v. *Turnberry Country Club*, 571 F. Supp. 2d 851, 864 (N.D. Ill. 2008). Nevertheless, "under Illinois law, sexual assault categorically is never within the scope [of employment]." *Martin* v. *Milwaukee Cnty.*, 904 F.3d 544, 556 (7th Cir. 2018); *see also Albright* v. *Am. Greetings Corp.*, No. 19-CV-4853, 2020 WL 3303001, at *1–2 (N.D. Ill. June 18, 2020) (dismissing with prejudice assault and battery claims because employer could not "be vicariously liable as a matter of law" for store manager's sexual misconduct). Neither the sexual misconduct nor vandalism alleged here falls within the scope of employment. The court therefore grants Target's motion to dismiss Count V with prejudice.

## VI.      Illinois Gender Violence Act (Count VI)

Hill next brings a claim under the Illinois Gender Violence Act ("IGVA"), alleging Target "personally encourag[ed] and assist[ed]" her co-workers' acts of gender-related violence by condoning and failing to prevent Al Green and Derrell's conduct. (Dkt. 22 ¶¶ 434–37.) The IGVA sustains actions against those who "personally encourag[e] or assist[] … acts of gender-

related violence." 740 Ill. Comp. Stat. 82/10.[15] Target argues that Hill's claim fails because she does not allege that her "supervisors personally committed, encouraged, or assisted in any acts of gender violence." (Dkt. 26 at 11.)

An employer's failure to take reasonable corrective action is insufficient to state an IGVA claim. *Butler* v. *Ford Motor Co.*, No. 21-CV-01244, 2022 WL 4448724, at *7–8 (N.D. Ill. Sept. 23, 2022) (dismissing IGVA claim where plaintiff merely alleged employer knew about a co-worker's conduct and failed to intervene); *Franks* v. *Anchez, Inc.*, No. 22 C 1763, 2022 WL 4325406, at *3 (N.D. Ill. Sept. 19, 2022) (dismissing IGVA claim where plaintiff alleged her supervisors knew about her co-worker's actions and took no action).

Hill relies on *Hespe* v. *City of Chicago*, 307 F. Supp. 3d 874, 889 (N.D. Ill. 2018), where the court denied summary judgment as to a plaintiff's IGVA claim against an individual defendant who threw an object at her. There are no allegations that Target committed gender-related violence here. Hill cites no further case law and otherwise fails to allege that her supervisors encouraged or assisted the alleged misconduct. The court therefore grants Target's motion to dismiss Count VI without prejudice.[16]

---

[15] The IGVA was amended, effective January 1, 2024, to add employer liability for "gender-related violence committed in the workplace by an employee or agent of the employer." *Rattunde* v. *Scores Chicago Gentleman's Club*, No. 23 C 14706, 2024 WL 4555336, at *1 (N.D. Ill. Oct. 23, 2024) (quoting 740 Ill. Comp. Stat. 82/11). The court declines to apply this amendment retroactively. *Id.* at *3 (concluding that "[t]he new requirements, rights, and duties imposed on employers by the … amendment prohibit[] retroactive application").

[16] A court in this district has determined that the previous version of the IGVA does not apply to corporations and therefore dismissed an action against a defendant corporation with prejudice. *Rattunde*, 2024 WL 4555336, at *4 (dismissing with prejudice because "[t]here is no means by which Plaintiff can state a claim as a matter of law against Defendant under the [IGVA]"). This court recognizes, however, that the parties did not brief the issue. Indeed, the cases cited by Target contemplate some level of involvement from corporate employees that could state an IGVA claim against the employer. *See Butler*, 2022 WL 4448724, at *7; *Anchez*, 2022 WL 4325406, at *3. Accordingly, the court declines to conclude at this juncture that Target is not covered by the pre-amendment IGVA and will not dismiss the claim with prejudice.

## VII.    Retaliatory Discharge (Count VIII)

### A.  Illinois Whistleblower Act

The Illinois Whistleblower Act ("IWA") prohibits employers from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation." 740 Ill. Comp. Stat. 174/15(b) (eff. Jan. 1, 2008).[17]

To state a Section 15(b) claim, an employee must plead that (1) she suffered an adverse employment action by her employer; (2) in retaliation; (3) for her disclosure to a government or law enforcement agency; (4) of a suspected violation of Illinois or federal law, rule, or regulation. *Smith* v. *Bd. of Educ.,* No. 20-cv-03069, 2021 WL 4459529, at *3 (N.D. Ill. Sept. 29, 2021) (citation omitted). An adverse employment action includes an "act or omission [that] would be materially adverse to a reasonable employee." *Harris* v. *City of Chi.*, 479 F. Supp. 3d 743, 750 (N.D. Ill. 2020) (quoting 740 Ill. Comp. Stat. 174/20.1). A materially adverse action "significantly alters the terms and conditions of the employee's job." *Elue* v. *City of Chicago*, No. 16 CV 09564, 2017 WL 2653082, at *5 (N.D. Ill. June 20, 2017) (citation omitted).

Hill first alleges that HR Business Partner Mike Przysucha ignored her complaints of mistreatment in retaliation for her filing an anonymous OSHA complaint "regarding freezing temperatures and unsafe working conditions." (Dkt. 22 ¶ 501.) When Hill informed Przysucha of

---

[17] The IWA was amended on January 1, 2025. The court applies the version of the statute in effect when Hill was employed by Target. *Wilson* v. *Vill. of Univ. Park*, No. 22 CV 6020, 2025 WL 296125, at *11 n. 9 (N.D. Ill. Jan. 24, 2025) ("The quoted language [of 740 Ill. Comp. Stat. 174/15(b)] comes from the version of the [IWA] that was in effect when Wilson was employed with the Village.") (citation omitted).

While Hill does not identify the specific section of the IWA under which she brings her claim, her failure to do so is not fatal. *See Parks* v. *Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1070 (N.D. Ill. 2018) (construing IWA claim under Section 15 based on the complaint, despite plaintiff's failure to specify). Because Hill alleges retaliation for her OSHA complaint, the court construes her claim under Section 15(b).

the complaint, he replied, "if you felt that is what you needed to do, then okay" and then ignored Hill's complaints of harassment. (*Id.* ¶¶ 503–05.) These allegations are insufficient to state a claim, as Hill fails to allege that this treatment "significantly alter[ed] the terms and conditions of [her] job." *See Elue*, 2017 WL 2653082, at *5–6 (quotation omitted) (citing in part *Brown* v. *Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) (explaining that getting a "cold shoulder" from management "easily falls within [the] non-actionable category")).

Hill next alleges that Diana harassed her in retaliation for her OSHA complaint by staring at her, whispering about her, isolating her from other co-workers, and requiring her to go through the trash. Harassment "can rise to [an adverse action] if it is severe enough to cause a significant change in the plaintiff's employment status." *Stutler* v. *Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). Nevertheless, harassment is not actionable under the IWA if it did not cause a "tangible job consequence." *Elue*, 2017 WL 2653082, at *6; *see also Boss* v. *Castro*, 816 F.3d 910, 918 (7th Cir. 2016) ("[A]nti-retaliation [law] does not protect against petty slights, minor annoyances, and bad manners.").

Here, Hill fails to allege that Diana's alleged actions changed her employment status or resulted in any "tangible job consequence." *See Elue*, 2017 WL 2653082, at *6 (dismissing portion of IWA harassment claim). Indeed, Hill fails to address Target's arguments in her response brief and does not identify any competing case law. Hill therefore fails to establish that Diana's alleged harassment constitutes an adverse employment action.

Finally, Hill alleges that she disclosed her OSHA complaint to HR shortly after making the complaint in November 2021, and that Target terminated her in September 2022 "in retaliation for [complaining] to OSHA." (Dkt. 22 ¶¶ 503, 508.) Unlike harassment, "termination is undoubtedly an adverse employment action." *Bagwe* v. *Sedgwick Claims Mgmt. Servs., Inc.*,

811 F.3d 866, 889 (7th Cir. 2016). Target responds that Hill's IWA termination claim should be dismissed because the time gap between her OSHA complaint and her termination makes an "inference of causation … implausible." (Dkt. 26 at 12.)

No bright-line rule governs when causation becomes plausible or implausible. *Carlson* v. *CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014). But a "retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Id.* at 828.

Here, the allegations do not support a plausible inference that Hill's OSHA complaint caused her termination. Hill alleges only that she informed Przysucha of her complaint, who responded neutrally, "If you felt that is what you needed to do, then okay." (Dkt. 22 ¶ 504.) Hill alleges that "from this time forward, [he] began to ignore [Hill's] complaints regarding harassment and mistreatment," culminating in her termination nearly one year later. (*Id.* ¶ 505.) Hill does not allege, however, the nature of her complaints, how Przysucha "ignored" her, or even when this occurred. Without citation to any supporting case law, these "bare-bones" allegations do not explain the delay between Hill's OSHA complaint and termination. *Carlson*, 758 F.3d at 828. The court therefore grants Target's motion to dismiss Hill's IWA claim under Count VIII without prejudice.

### B. Common Law

Hill also brings a retaliatory discharge claim under Illinois common law. Target argues that Hill's claim should be dismissed because she failed to plead that her discharge was due to her OSHA complaint and did not violate public policy. Hill responds with no substantive arguments and has therefore waived the claim. *Schaefer* v. *Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are

arguments unsupported by legal authority.") (citation omitted). The court grants Target's motion to dismiss Count VIII under a common law retaliatory discharge theory without prejudice.

## CONCLUSION AND ORDER

For the reasons stated above, Target's motion to dismiss is granted in part and denied in part. The court denies Target's motion to dismiss Count I under Section 1981 to the extent Hill alleges racial harassment related to Leone and Joe. The court denies Target's motion to dismiss Count I under Title VII. The remainder of Count I is dismissed without prejudice.

The court grants Target's motion to dismiss Counts II, III, IV, VI, VII, and VIII without prejudice. Plaintiff is given until April 15, 2025, to file a second amended complaint. A second amended complaint shall set out in a "short and plain" manner only facts pertinent to each claim, so as to inform the defendant and the court the theories of liability on which she will rest. Count V is dismissed with prejudice.

An in-person scheduling conference will be held on May 14, 2025, at 9:30 a.m. in courtroom 2201.

Date: March 26, 2025

_____
U.S. District Judge Joan H. Lefkow